UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

PAULA GILYARD for Consuela Gilyard,

       Plaintiff,

v.                                           Case No.  5:05-cv-254-Oc-10GRJ

JOANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.
_____

### **REPORT AND RECOMMENDATION**[1]

Paula Gilyard, on behalf of her daughter, Consuela Gilyard, appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for children's Supplemental Security Income ("SSI") disability benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 10), and both parties have filed briefs outlining their respective positions.  (Docs. 17 & 18.)  For the reasons discussed below the Commissioner's decision is due to be **AFFIRMED**.

### **I. PROCEDURAL HISTORY**

Paula Gilyard, on behalf of her daughter,[2] protectively filed an application for children's SSI benefits on August 19, 2002, alleging that Plaintiff became disabled on July 30, 2002, due to diabetes.  (R. 49-51.)   Plaintiff's application was denied initially (R. 31-33, 37-38) and upon reconsideration.  (R. 40-42.)  Plaintiff timely requested a

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] Even though this action is being brought by Consuela Gilyard's mother on her behalf, the Court will refer to Consuela as the Plaintiff.

hearing before an administrative law judge ("ALJ") (R. 43) which was conducted on September 2, 2004. (R. 244-61.) On December 22, 2004, the ALJ issued a decision finding that the Plaintiff was not disabled, and thus, not eligible for SSI payments. (R. 13-21.) Plaintiff requested review of the hearing decision. (R. 9.) The Appeals Council, on March 18, 2005, denied Plaintiff's Request for Review (R. 5-8), making the ALJ's hearing decision the final decision of the Commissioner.[3] On May 23, 2005, Plaintiff filed a timely appeal to this Court. (Doc. 1.)

## II. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[4] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[5] In reviewing the Commissioner's decision, the district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6]

---

[3] See 20 C.F.R. § 416.1481 (2003).

[4] See 42 U.S.C. § 405(g) (2003).

[5] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401 (1971)); *accord*, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[6] Foote, 67 F.3d at 1560; *accord*, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

Congress has empowered the district court to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause.[7] Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[8] The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[9] Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.[10]

### III. THE LAW

The law considers a child disabled, for the purposes of children's SSI benefits, if that child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] However, no child who "engages in substantial gainful activity . . . may be

---

[7] 42 U.S.C. § 405(g) (sentence four).

[8] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[9] Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[10] Bowen v. Heckler, 748 F.2d 629, 631, 636-37 (11th Cir. 1994).

[11] 42 U.S.C. § 1382c(a)(3)(C)(I) (2003).

considered to be disabled."[12] A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[13] The statute does not define "marked and severe functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined effect and combined impact of all of the individual's impairments.[14] In determining the disability of a child, the Commissioner must make reasonable efforts to ensure that a qualified pediatrician or other specialist evaluates the case.[15]

The Commissioner promulgates regulations governing eligibility for SSI benefits.[16] On September 11, 2000, the Social Security Administration (SSA) published the final regulations governing childhood disability, which went into effect on January 2, 2001, replacing the interim regulations that had been in effect during the four years prior.[17]

In accordance with Congressional intent, the regulations define "marked and severe functional limitations" as "a level of severity that meets, medically equals, or

---

[12] 42 U.S.C. § 1382c(a)(3)(C)(ii).

[13] 42 U.S.C. § 1382c(a)(3)(D).

[14] 42 U.S.C. § 1382c(a)(3)(G).

[15] 42 U.S.C. § 1382c(a)(3)(I).

[16] See 20 C.F.R. Pt. 416, Subpt I (2003); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

[17] See 65 Fed. Reg. 54,747-01.

functionally equals the listings."[18] The regulations set forth a three-part sequential test the Commissioner must follow when determining disability in children.[19] First, the Commissioner must find that the child is not performing substantial gainful activity.[20] Second, if the child is not working, it must be found that the child suffers from an impairment or combination of impairments that is severe.[21] Third, if there are severe impairments, it must then be found that the child's impairments meet, medically equal, or functionally equal the listings.[22] If the child does not meet all three criteria then the child is not disabled. In addition to the three-part test, the Commissioner must find that the child's impairment meets the duration requirement, which states the impairment must be expected to result in death or to last longer than 12 months. If the child meets all three criteria and the duration requirement, then the child is disabled.[23]

Provisions for determining functional equivalence are established under 20 C.F.R. § 416.926a. Stated generally, to functionally equal a listed impairment, a child must demonstrate an "extreme" limitation in one domain of functioning, or show a "marked" limitation in two domains of functioning.[24] There are six domains of functioning to be considered: (1) acquiring and using information; (2) attending and

---

[18] 20 C.F.R. § 416.902 (2003).

[19] 20 C.F.R. § 416.924(a) (2003).

[20] 20 C.F.R. § 416.924(b).

[21] 20 C.F.R. § 416.924(c).

[22] 20 C.F.R. § 416.924(d).

[23] 20 C.F.R. § 416.924(d)(1).

[24] 20 C.F.R. § 416.926a(a) (2003) (all further references to 20 C.F.R. will be to the 2003 version unless otherwise specified).

completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.[25] A "marked" limitation in a domain means that the child's impairment "interferes seriously with [their] ability to independently initiate, sustain, or complete activities."[26] An "extreme" limitation in a domain means that the child's impairment "interferes very seriously with [their] ability to independently initiate, sustain, or complete activities."[27]

## IV. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff, born on June 3, 1992, was a twelve-year old child at the time of the hearing. (R. 247.) At the hearing, Plaintiff testified that she is tired during the day and naps in the afternoon. (R. 250-52.) Plaintiff testified that she gets along with her teachers, except for one, that she gets along with classmates and that she does her homework. (R. 252.) She further testified that when she is not at school she sleeps, uses a computer to email friends, and walks around the block. (R.252-53.)

Plaintiff's mother, Paula Gilyard, testified that Plaintiff had not been hospitalized in the past year. (R. 253.) She testified that Plaintiff's greatest problems are diabetes and depression. (R. 253-54.) Ms. Gilyard testified that Plaintiff also has ADHD, but that medications were helping. (R. 254-55.) Ms. Gilyard further testified that she has to give Plaintiff her insulin and medications. (R. 256.) Ms. Gilyard testified that Plaintiff is bossy with other kids. (R. 260.)

---

[25] 20 C.F.R. § 416.926a(b).

[26] 20 C.F.R. § 416.926a(e)(2).

[27] 20 C.F.R. § 416.926a(e)(3).

Plaintiff was treated by medical providers at Lake Pediatrics from July 30, 2002 until August 11, 2004. (R. 114-16, 175-180A). On July 31, 2002, Plaintiff began treatment at the Shands Pediatric Diabetes Clinic. (R. 145, 161-64.) Plaintiff's blood glucose level was elevated to 190, she was diagnosed with Type I diabetes and it was recommended that she start insulin. On August 14, 2002, Plaintiff's diabetes mellitus was in good control, her insulin level was normal and she had positive GAD antibodies. (R. 148, 160.) On September 13, 2002, Plaintiff reported getting depressed because of her diabetes and it was noted that Plaintiff had gone from straight A's to being disruptive in class. (R. 144, 158.) It was recommended that Plaintiff set up an appointment for a psych evaluation, stop metformin because Plaintiff was diagnosed with Type 1 rather than Type 2 diabetes, stop using the sliding scale and meet with a nutritionist. (R. 158.)

On October 7, 2002, Plaintiff was seen by John S. Geddes, O.D. because of blurred vision. (R. 117-18.) Dr. Geddes noted that Plaintiff would be referred to an opthamologist if her vision did not improve. (R. 118.) There are no further records related to Plaintiff's vision.

On October 23, 2002, Plaintiff returned to the Shands clinic and reported no problems with low blood sugar but gave a "thumbs down sign" when asked how things have been going and stated that she did not like checking her blood sugar and doing shots. (R. 140.) Plaintiff reported that she would be seeing a counselor at the Marion County Health Department the following week. (R. 141.) It was noted that Plaintiff's diabetes was in good control. (Id.) On January 24, 2003, Plaintiff's diabetes was in "fair control" but it was noted that her family had minimal understanding of diabetes. (R.

137-39.) On February 21, 2003, Plaintiff reported that she was not checking her blood sugar as recommended and that she feels bad when she tests and gets a 200 or higher. (R. 133-35.) Plaintiff was "very tearful and feels sad most of the time." (R. 133.) The impression was "terrible metabolic control secondary to failure to adhere to diabetes regimen and psychosocial factors." (R. 134.) On August 27, 2003, Plaintiff reported that she had trouble remembering to check her blood sugar levels and sometimes sneaks food. (R. 218.) It was noted that Plaitniff was participating in cheerleading and was trying out for the volleyball team. (R. 218.) Plaintiff was to initiate treatment with Nonolog insulin pre-meals and undergo counseling/education on carb counting. (R. 218A.) On November 10, 2003, Plaintiff reported starting Concerta three weeks earlier for ADHD and that it had helped her focus more in school. (R. 217.) Plaintiff stated that she felt depressed sometimes and that a counselor had been coming to see her twice a week at school but that she refused to speak to the counselor. (Id.)

On January 21, 2004, Plaintiff was seen at the Shands clinic. (R. 213-14.) Plaintiff's condition had been in poor control over the last several months and Plaintiff admitted to missing shots and not checking her blood glucose levels. (Id.) On February 18, 2004, Plaintiff still had poor control of diabetes and reported developing headaches once a week. (R. 211-12.) On May 5, 2004, the assessment was "[h]orrible compliance; poor control." (R. 209-10.) On June 11, 2004, Plaintiff possibly had slightly improved control of her diabetes (R. 207-08.) On July 14, 2004, Plaintiff had horrible control and it was noted that Plaintiff missed her insulin almost every day, was not making improvement, would eat whatever she wanted and rarely exercised. (R. 205-06.) On September 20, 2004, Plaintiff was transported to Florida Hospital because of

diabetic ketoacidosis. (R. 182-204.) Plaintiff complained of left flank pain, which was worse with walking and an elevated blood sugar level. (R. 187-89.)

Plaintiff received counseling on one occasion at Camelot Community Care. (R. 171-73.) Plaintiff was subsequently discharged on March 26, 2004 against the recommendation of the treatment team.

On April 21, 2003, Hugh Brown, Ph.D. performed a psychological evaluation of Plaintiff in conjunction with her application for disability benefits. (R. 125-26.) Dr. Brown noted that Plaintiff's affect was restricted, mood dysphoric and that she was passive and apathetic. Dr. Brown noted that Plaintiff had little difficulty sustaining attention, was generally able to follow directions and seemed to answer most questions to the best of her ability. Dr. Brown gave a guarded prognosis of Adjustment Disorder With Depressed Mood (DSM-IV 309.0). Dr. Brown noted that Plaintiff had allegedly been a good student until she was diagnosed with diabetes in 2002, after which her grades had fallen, she had become indifferent to self-care and oppositional and defiant. Dr. Brown concluded that Plaintiff should be referred for psychiatric treatment with anti-depressant medication and counseling and that no improvement in school grades and behavior would occur without appropriate intervention.

The school records include teacher questionnaires completed by Plaintiff's fifth grade teachers – Tori Brunold (R. 76-79) and Cay Hepp (R. 101-08.) On September 30, 2002, Ms. Brunold noted that Plaintiff was unmotivated, often had late or missing work, and was easily distracted, often requiring redirection to return to task. Ms. Brunold noted that 60-65% of Plaintiff's work was completed on time. She also noted that Plaintiff was below grade level in math. On March 31, 2003, Ms. Hepp, noted that

Plaintiff's math, reading and writing were below grade level and that she was frequently absent due to doctors appointments and diabetes-related health issues. Ms. Hepp noted that Plaintiff had a slight problem acquiring and using information and attending and completing tasks. With respect to interacting and relating with others, Ms. Hepp noted that in some areas Plaintiff had a slight problem, while she had an obvious problem in others. At various times, Plaintiff's attitude toward other children and adults has been excessively confrontational with words and gestures. Ms. Hepp also noted that Plaintiff had obvious problems with certain aspects of caring for herself and no problem moving about and manipulating objects.

On December 15, 2004, Plaintiff was found to be a 504 disabled student. (R. 219-21.) Plaintiff's overall Global Executive Composite score was 79; her score in the behavior regulatory subsection was 83 and her score in the metacognition subsection was 74. It was noted that any score over 65 was clinically significant.

In evaluating the Plaintiff's application for SSI, the Commissioner employed two different reviewers to complete a Childhood Disability Evaluation Form (the "Form") about the Plaintiff. The first Form, which was completed on October 20, 2002, shows that Plaintiff has severe impairments, but that those impairments do not meet, medically equal, or functionally equal the severity of a listing. (R. 119-24.) Additionally, the first Form reflects less than marked limitation in the health and physical well-being domain. (R. 122.) The second Form, completed on May 16, 2003, also shows that Plaintiff has severe impairments, but that those impairments do not meet, medically equal, or functionally equal the severity of a listing. (R. 166-70) The second Form notes less than marked limitations in acquiring and using information; attending and completing tasks;

interacting and relating with others; caring for yourself; and health and physical well-being.

The ALJ determined that Plaintiff suffers from type I diabetes mellitus, an adjustment disorder with depressed mood and an attention deficit hyperactivity disorder. (R. 16.)  The ALJ then found that Plaintiff's impairments did not meet, medically equal, or functionally equal the criteria for any listed impairment.  In concluding that Plaintiff's impairments did not functionally equal any listing, the ALJ found that Plaintiff had more than slight but less than marked limitations in the domain of acquiring and using information; more than slight but less than marked limitations in the domain of attending and completing tasks; more than slight but less than marked limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; more than slight but less than marked limitations in the domain of caring for yourself; and more than slight but less than marked limitations in the domain of health and physical well-being.  (R. 17-20.)  Accordingly, the ALJ found that Plaintiff was not disabled.

## V. DISCUSSION

Plaintiff argues that the ALJ's conclusion that Plaintiff's impairments did not functionally equal any listing was not based on substantial evidence.  Plaintiff contends that the AlJ should have found that Plaintiff had marked limitations in at least three of the domains – attending and completing tasks; interacting and relating with others; and health and physical well-being.  Based on a thorough review of the record, the Court finds that the ALJ's findings regarding those three domains are supported by substantial evidence.

### *Attending and Completing Tasks*

First, Plaintiff argues that the ALJ should have found at least a marked limitation in the domain of attending and completing tasks based on the questionnaires completed by Ms. Brunold and Ms. Hepp.  Plaintiff contends that these questionnaires "clearly contradict[ ] the ALJ's findings."[28]  Doc. 17, page 7.  However, the ALJ expressly considered these questionnaires in his evaluation of the evidence and his conclusion that Plaintiff had less than a marked limitation is supported by substantial evidence.

Ms. Brunold did not specifically rate Plaintiff in the domain of attending and completing tasks.  While she noted that Plaintiff was unmotivated, often had late or missing work and was easily distracted and often required redirection to return to task, she also noted that Plaintiff completed about 60-65% of her work on time and often responded to redirection and returned to task. (R. 76-79.)  Ms. Hepp rated Plaintiff as having only "a slight problem" in attending and completing tasks despite the fact that she was disorganized, always late with her work and inconsistent with grades ranging from A's to F's.  (R. 103.)

These questionnaires are supportive of the ALJ's conclusion that Plaintiff had more than a slight but less than a marked limitation in this domain.  Because the task of choosing between conflicting evidence is one that is peculiarly suited to the fact finder,[29] and because there is substantial evidence that supports the ALJ's finding that Plaintiff

---

[28] See Doc. 17, page 7.

[29] Hand v. Heckler, 761 F. 2d 1545,1549 (11th Cir. 1985).

had more than a slight but less than a marked limitation in the domain of attending and completing tasks, the Court will not disturb the ALJ's determination.

### *Interacting and Relating with Others*

Second, Plaintiff contends that the ALJ failed to properly consider Ms. Hepp's questionnaire in determining that Plaintiff's limitation was less than marked in the domain of interacting and relating with others. While Ms. Hepp noted that Plaintiff's behavior/attitude towards other children and adults was excessively confrontational with words and gestures at various times, she rated Plaintiff as having only "a slight problem" in nine (9) out of thirteen (13) categories and "an obvious problem" in the remaining four (4) categories.[30]

Moreover, Plaintiff's other teacher, Ms. Brunold noted that Plaintiff was "fine" in relating to her peers and only identified one way in which Plaintiff did not adhere to rules – i.e., asking other students to buy her food that was not on her diabetic diet. (R. 77.) Plaintiff testified that she gets along with classmates, has only had problems with one teacher (R. 252), and spends several hours a day emailing with friends (R.252-53)**.** In addition, the medical records show that Plaintiff was participating in cheerleading and volleyball in sixth grade. (R. 218.)

---

[30] The obvious problem categories included: (1) seeking attention appropriately; (2) respecting/obeying adults in authority; (3) relating experiences and telling stories; and (4) interpreting meaning of facial expression, body language, hints, sarcasm. Plaintiff also cites to Ms. Hepp's ratings and comments regarding Plaintiff's ability to care for herself. See Doc. 17, page 7. However, the ALJ did not err by not considering evidence related to another domain in his evaluation of Plaintiff's ability to interact and relate with others.

Accordingly, because the ALJ's finding that Plaintiff had more than a slight but less than a marked limitation in the domain of interacting and relating with others is supported by substantial evidence, the Court will not disturb the ALJ's determination.

### *Health and Physical Well-Being*

Lastly, Plaintiff argues that the ALJ failed to properly evaluate the medical evidence in concluding that she had more than a slight but less than a marked limitation in the domain of overall health and physical well-being.

In reaching this conclusion, the ALJ stated that Plaintiff has a history of diabetes but that she had been non-compliant with her insulin regimen and that her blood sugar have been elevated due to her non-compliance. (R. 20.) This conclusion is supported by substantial record evidence. The medical evidence shows that Plaintiff and her parents failed to regularly check her blood sugar and regulate her insulin. (R. 134, 205-206, 209-10, 213-14, 218-218A.) Moreover, the evidence shows that Plaintiff's diabetes was well-controlled when she followed the prescribed treatment. (R. 137-39, 141, 148, 248.) The evidence also shows that Plaintiff has been admitted to the hospital only one time related to her diabetes (R. 182-204) and that she had not been hospitalized in the twelve months leading up to the hearing. (R. 253.)

With respect to Plaintiff's mental impairments, Dr. Brown concluded that Plaintiff should be referred for psychiatric treatment with antidepressant medication and counseling and that her grades and behavior would not improve without appropriate intervention. (R. 126.) However, Plaintiff's mother admits that despite the fact that she knows her daughter needs to talk to someone about her problems, she has failed to find an appropriate counselor. (R. 257-58). Moreover, Plaintiff's parents removed her from

treatment at Camelot Community Care against the recommendation of the treatment team, because they did not want her taking Paxil. (R. 171-73A, 257). Additionally, Plaintiff's academic performance and behavior improved after she began taking Concerta for ADHD in late 2003. (R. 180, 217, 255.) Finally, the evidence shows that despite Plaintiff's diabetes and mental impairments, Plaintiff continues to attend school, achieve average grades, participate in cheerleading and volleyball and e-mail with friends. (R. 180, 218, 253, 255).

Accordingly, because the task of choosing between conflicting evidence is one that is peculiarly suited to the fact finder,[31] and because there is substantial evidence that supports the ALJ's finding that Plaintiff had more than a slight but less than a marked limitation in the domain of health and physical well-being, the Court will not disturb the ALJ's determination.

## VI. CONCLUSION

In view of the foregoing, it is respectfully recommended that the Commissioner's decision should be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida this 17th day of July 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:

    The Honorable W. Terrell Hodges
    Senior United States District Judge

    All Counsel, and to:

---

[31] Hand v. Heckler, 761 F. 2d 1545,1549 (11th Cir. 1985).

Mary Ann Sloan, Chief Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL 33602